**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CASE NO. 3:22-CV-003-KDB-DCK**

| | | |
|---|---|---|
| FELICIA MORGAN individually, and as *Guardian ad litem* of Bobby Morgan, an incompetent person, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CITY OF CHARLOTTE; EDWARD GONZALEZ, both individually and in his official capacity as a law enforcement officer with the Charlotte-Mecklenburg Police Department; DEREK RUD, both both individually and in his official capacity as a law enforcement officer with the Charlotte-Mecklenburg Police Department, JOSHUA SKIPPER, both individually and in his official capacity as a law enforcement officer with the Charlotte-Mecklenburg Police Department; JOSEPH ELLIS, both individually and in his official capacity as a law enforcement officer for the Charlotte-Mecklenburg Police Department, and, JENSEN TILSON, both individually and in his official capacity as a law enforcement officer for the Charlotte-Mecklenburg Police Department, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT** **(JURY TRIAL DEMAND)** |
| Defendants. | ) ) ) | |

COME NOW the Plaintiffs, by and through undersigned counsel, hereby complaining of the Defendants, jointly and severally as follows:

## NATURE OF THE ACTION

1. This is a civil action seeking compensation and punitive damages pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, for deprivation of Plaintiff Bobby Morgan's civil rights by the Defendants, and specifically Plaintiff Bobby Morgan's right to freedom from unlawful assault and battery, malicious prosecution, and to freedom from the application of excessive and unreasonable force. This civil action also presents claims under the

1

Constitution of North Carolina for deprivation of state constitutional rights under its common law for assault and battery, malicious prosecution, negligence, gross negligence, and intentional infliction of emotional distress.

## **PARTIES, JURISDICTION AND VENUE**

2.  The causes of action arise herein from acts and omissions occurring in Charlotte, Mecklenburg County North Carolina.

3.  The Superior Court has jurisdiction over this matter pursuant to N.C. Gen. Stat. § 7A-240 *et seq.* and Mecklenburg County is the proper venue pursuant to N.C. Gen. Stat.§ 1-82.

4.  At all times relevant to the incident alleged herein, Mr. Bobby Morgan (hereinafter "Bobby") is a citizen and a resident of Charlotte, Mecklenburg County, North Carolina.

5.  Bobby was diagnosed with schizophrenia, attention deficit hyperactivity disorder and bipolar disorder at age five. Bobby is incompetent but is able to communicate, ambulate and take care of his basic needs.

6.  The Plaintiff, Felicia Morgan (hereinafter "Plaintiff"), is a citizen and resident of Charlotte, Mecklenburg County, North Carolina, and is the biological mother and legal guardian of Bobby Morgan.

7.  Plaintiff Felicia Morgan has been duly appointed as the *guardian ad litem* of Bobby Morgan by the Superior Court of Mecklenburg County in 2015, as Bobby is an incompetent person, incapable of acting in his own self-interest.

8.  The Defendants are "persons" withing the meaning of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and each has the capacity to be sued for the claims presented in this action.

9.  The Defendant, City of Charlotte (hereinafter "City"), was and is a municipal corporation located in Mecklenburg County, North Carolina, duly chartered and existing pursuant to the provisions of N.C. Gen. Stat. §160A-11 and vested with corporate powers and rights as specified in N.C. Gen. Stat. § 160A-1 l, including, but not limited to, the capacity to sue and be sued. At all times relevant to this action, the City acted through its managers and policy makers, including the Chief of Police and other employees of the Charlotte-Mecklenburg Police Department (hereinafter "CMPD") and the acts, edicts, and practices of said persons whom represent the official policies of the City.

10. Upon information and belief, the operating budget of the CMPD is funded jointly by the City and the County, with both the City and the County having the actual right and legal authority to direct and control the CMPD, its policies and procedures, officers, and employees. Alternatively, both the City and the County have the apparent right and authority to direct and control the CMPD, its policies and procedures, officers, and employees.

11. Upon information and belief, to the extent that any and/or all of the named Defendants in this civil action claim they are a municipal and/or governmental and/or City and/or County owned, operated, and/or funded entity, or an employee and/or agent of any such entity, such Defendants do not have governmental immunity and/or sovereign immunity for any of the acts or omissions described herein. In the alternative, should any and/or all of the Defendants in this civil action have governmental immunity and/or sovereign immunity, upon information and belief, any and/or all such Defendants have waived any and all such governmental and/or sovereign immunity to which they may have been otherwise entitled, for themselves, their agents, employees, and all officials acting in their official (and, if applicable, individual capacities) for civil liability and tortuous conduct by the act of purchasing or otherwise obtaining and/or having in place liability insurance (or the functional and substantive equivalent thereof, i.e., participation in local government risk pool, etc.) prior to, concurrent with, and/or subsequent to and/or applicable to the acts and omissions alleged herein.

12. Upon information and belief, the City has secured liability insurance, applicable to liability from any negligence, tortious conduct, or any other cause of action as alleged in this Complaint by employees and/or agents acting within the course and scope of their employment with the City, and therefore waives any and all claims for municipal immunity.

13. Upon information and belief, the City participated in a local government risk pool or other functional and substantive equivalent thereof, at all times applicable to the events that are the subject of this civil action.

14. Subject matter jurisdiction is therefore appropriate and proper and any and all such municipal, county, governmental, or sovereign immunity is and has been fully waived pursuant to North Carolina law, including but not limited to, N.C. Gen. Stat. §160A-485 and/or N.C. Gen. Stat. §153A-435.

15. Plaintiffs are informed and believe that Defendants routinely pays claims for damages arising from the gross negligent, deliberate and malicious acts or omissions of its agents/or employees.

16. The raising of an immunity defense to avoid payment of damages due to Plaintiffs would be a violation of Plaintiffs' due process rights and equal protection rights pursuant to North Carolina Constitution and would constitute unwarranted discrimination.

17. Upon information and belief, Defendant Edward Gonzalez (hereinafter "Gonzalez") is a citizen and resident of Mecklenburg County, North Carolina. Gonzalez is sued in this action in his individual and official capacities for both compensatory and punitive damages pursuant to both state and federal law.

18. At all times relevant to the incident alleged herein, Gonzalez was hired by the City and acting under color of state law within the course and scope of his job duties as a law

3

enforcement officer with the CMPD. Gonzalez is being sued in this action in both his individual and official capacities for compensatory and punitive damages.

19. Upon information and belief, Gonzalez was alleged to have violated the civil rights and liberties of another citizen of Mecklenburg County, Bobby Morgan, on or about December 1, 2018 while acting in his official capacity as a law enforcement officer with the CMPD due to the unlawful and unjustified use of force used against an individual.

20. At all times relevant to the incident alleged herein, Gonzalez was employed by the City as a law enforcement officer and was acting as an agent of the City and/or County while within the course and scope of his employment and duties as a sworn law enforcement officer of the CMPD, and was acting under the color of state laws, statutes, regulations, customs, practices, and usage of the City of Charlotte, County of Mecklenburg, and the state of North Carolina. Gonzalez is being sued in this action both his individual and official capacities for compensatory and punitive damages.

21. Gonzalez's conduct alleged herein was deliberate, grossly negligent, in bad faith, intentional, wanton, willful, and/or done with a conscious or reckless disregard for the rights and safety of others, including Bobby.

22. Gonzalez is not entitled to public official immunity for the claims alleged herein pursuant to the "public duty doctrine."

23. Upon information and belief, Defendant Joshua Skipper (hereinafter "Skipper") is a citizen and resident of Mecklenburg County, North Carolina. Skipper is sued in this action in his individual and official capacities for both compensatory and punitive damages pursuant to both state and federal law.

24. At all times relevant to the incident alleged herein, Skipper was hired by the City and acting under color of state law within the course and scope of his job duties as a law enforcement officer with the CMPD. Skipper is being sued in this action in both his individual and official capacities for compensatory and punitive damages.

25. Upon information and belief, Skipper was alleged to have violated the civil rights and liberties of another citizen of Mecklenburg County, Bobby Morgan, on or about December 1, 2018 while acting in his official capacity as a law enforcement officer with the CMPD due to the unlawful and unjustified use of force used against an individual.

26. At all times relevant to the incident alleged herein, Skipper was employed by the City as a law enforcement officer and was acting as an agent of the City and/or County while within the course and scope of his employment and duties as a sworn law enforcement officer of the CMPD, and was acting under the color of state laws, statutes, regulations, customs, practices, and usage of the City of Charlotte, County of Mecklenburg, and the state of North Carolina. Skipper is being sued in this action both his individual and official capacities for compensatory and punitive damages.

27. Skipper's conduct alleged herein was deliberate, grossly negligent, in bad faith, intentional, wanton, willful, and/or done with a conscious or reckless disregard for the rights and safety of others, including Bobby.

28. Skipper is not entitled to public official immunity for the claims alleged herein pursuant to the "public duty doctrine."

29. Upon information and belief, Defendant Derek Rud (hereinafter "Rud") is a citizen and resident of Mecklenburg County, North Carolina. Rud is sued in this action in his individual and official capacities for both compensatory and punitive damages pursuant to both state and federal law.

30. At all times relevant to the incident alleged herein, Rud was hired by the City and acting under color of state law within the course and scope of his job duties as a law enforcement officer with the CMPD. Rud is being sued in this action in both his individual and official capacities for compensatory and punitive damages.

31. Upon information and belief, Rud was alleged to have violated the civil rights and liberties of another citizen of Mecklenburg County, Bobby Morgan on or about December 1, 2018 while acting in his official capacity as a law enforcement officer with the CMPD due to the unlawful and unjustified use of force used against an individual.

32. At all times relevant to the incident alleged herein, Rud was employed by the City as a law enforcement officer and was acting as an agent of the City and/or County while within the course and scope of his employment and duties as a sworn law enforcement officer of the CMPD, and was acting under the color of state laws, statutes, regulations, customs, practices, and usage of the City of Charlotte, County of Mecklenburg, and the state of North Carolina. Rud is being sued in this action both his individual and official capacities for compensatory and punitive damages.

33. Rud's conduct alleged herein was deliberate, grossly negligent, in bad faith, intentional, wanton, willful, and/or done with a conscious or reckless disregard for the rights and safety of others, including Bobby.

34. Rud is not entitled to public official immunity for the claims alleged herein pursuant to the "public duty doctrine".

35. Upon information and belief, Defendant Joseph Ellis (hereinafter "Ellis") is a citizen and resident of Mecklenburg County, North Carolina. Joseph Ellis is sued in this action in his individual and official capacities for both compensatory and punitive damages pursuant to both state and federal law.

36. At all times relevant to the incident alleged herein, Ellis was hired by the City and acting under color of state law within the course and scope of his job duties as a law enforcement officer with the CMPD. Ellis is being sued in this action in both his individual and official capacities for compensatory and punitive damages.

5

37. Upon information and belief, Ellis was alleged to have violated the civil rights and liberties of another citizen of Mecklenburg County, Bobby Morgan on or about December 1, 2018 while acting in his official capacity as a law enforcement officer with the CMPD due to his acts or omissions, which were a substantial factor in causing the unlawful and unjustified use of force used against an individual.

38. At all times relevant to the incident alleged herein, Ellis was employed by the City as a law enforcement officer and was acting as an agent of the City and/or County while within the course and scope of his employment and duties as a sworn law enforcement officer of the CMPD, and was acting under the color of state laws, statutes, regulations, customs, practices, and usage of the City of Charlotte, and the state of North Carolina. Ellis is being sued in this action both his individual and official capacities forcompensatory and punitive damages.

39. Ellis' conduct alleged herein was deliberate, grossly negligent, in bad faith, intentional, wanton, willful, and/or done with a conscious or reckless disregard for the rights and safety of others, including Bobby.

40. Ellis is not entitled to public official immunity for the claims alleged herein pursuant to the "public duty doctrine."

41. Upon information and belief, Defendant Jensen Tilson (hereinafter "Tilson") is a citizen and resident of Mecklenburg County, North Carolina. Tilson is sued in this actionin his individual and official capacities for both compensatory and punitive damages pursuant to both state and federal law.

42. At all times relevant to the incident alleged herein, Tilson was hired by the City and acting under color of state law within the course and scope of his job duties as a law enforcement officer with the CMPD. Tilson is being sued in this action in both his individual and official capacities for compensatory and punitive damages.

43. Upon information and belief, Tilson was alleged to have violated the civil rights and liberties of another citizen of Mecklenburg County, Bobby Morgan on or about December 1, 2018 while acting in his official capacity as a law enforcement officer with the CMPD due to his acts or omissions, which were a substantial factor in causing the unlawful and unjustified use of force used against an individual.

44. At all times relevant to the incident alleged herein, Tilson was employed by the City as a law enforcement officer and was acting as an agent of the City while within the course and scope of his employment and duties as a sworn law enforcement officer of the CMPD, and was acting under the color of state laws, statutes, regulations, customs, practices, and usage of the City of Charlotte, and the state of North Carolina. Tilson is being sued in this action both his individual and official capacities forcompensatory and punitive damages.

45. Tilson's conduct alleged herein was deliberate, grossly negligent, in bad faith, intentional, wanton, willful, and/or done with a conscious or reckless disregard for the rights and safety of others, including Bobby.

46. Tilson is not entitled to public official immunity for the claims alleged herein pursuant to the "public duty doctrine.

47. The grossly negligent acts, omissions, and liability of all named Defendants including their agents, principals, employees and/or servants, both directly and vicariously, pursuant to principals of non-delegable duty, corporate liability, actual authority, apparent authority, actual agency, ostensible agency and/or *respondeat superior,* as well as the acts and/or omissions of the above-named Defendants, were a direct and proximate cause of the injuries, damages, and losses sustained by the Plaintiffs.

## JOINT AND SEVERAL LIABILITY

48. Plaintiffs hereby incorporates the allegations contained in prior paragraphs of this Complaint, by reference thereto, as if herein fully set forth.

49. The Defendants are jointly and severally liable for all damages to the Plaintiffs alleged herein since their negligent, grossly negligent, reckless, and wanton acts and omissions, singularly or in combination, are a direct and proximate cause of Plaintiffs damages, injuries, and losses.

## FACTUAL ALLEGATIONS

50. Plaintiffs hereby incorporates the allegations contained in paragraphs 1 through 50 of this Complaint, by reference thereto, as if herein fully set forth.

51. On or about December 1, 2018, Bobby Morgan was a twenty-nine (29) year- old male resident of Charlotte, Mecklenburg County, North Carolina.

52. Based on information and belief, Bobby has a history of mental illness and had been diagnosed with schizoaffective disorder and bipolar disorder.

53. On or about December 1, 2018, at or around 8:26 a.m. Bobby entered a 9-1-1 call for service due to two (2) of his neighbors, Takia Cuthbertson and Kisha Mobley located at 3946 Winfield Dr., stating that the individuals were bullying and harassing him.

54. Based on information and belief, Bobby had a history of being harassed and bullied by said neighbors.

55. CMPD Officer Ellis and Officer Tilson responded to the call to service at Bobby's residence.

56. Officer Tilson had a history of interactions with Bobby and was aware that Bobby suffered from mental illness(es) and was known to openly carry a non-lethal weapon and was always cooperative with Tilson without any incident. On the date of the incident, December 1, 2018, neither Officer Ellis nor Tilson feared for the safety of their lives nor the lives of others when dispatched to 3946 Winfield Dr., Charlotte, North Carolina 28205.

57. Upon said harassment inflicted upon Bobby by his neighbors, he became distressed and expressed his desire to be left alone, so he would not become more agitated.

58. Bobby displayed signs of agitation and excitability which was heightened by the interaction with Officers Tilson and Ellis.

59. Upon information and belief, the Officers spoke to the neighbors that Bobby had reported had been bullying and harassing him and all parties were all standing outside.

60. Officer Ellis attempted to grab Bobby, Bobby became fearful and quickly retreated inside his residence of 3944 Winfield Drive in Charlotte, North Carolina.

61. Upon information and belief, and upon Bobby entering his home, Officer Ellis reported hearing a single gunshot coming from general direction of the residence and placed a dispatch call of "shots fired" for additional units for an "Officer Involved Shooting."

62. Upon information and belief, a dispatch call to all units for an "Officer Involved Shooting" was placed by Officer Ellis and the Special Weapons and Tactics Team, (hereinafter, SWAT) was requested and dispatched to 3946 Winfield Drive in Charlotte North Carolina.

63. Upon information and belief, Defendant Officers were wearing body cams that recorded their interactions and statements while at the scene and while interacting with Bobby and Plaintiffs.

64. Upon information and belief, the digital recordings from the Defendant Officers on the scene were and should be under the exclusive custody of the Defendants.

65. Upon information and belief, Bobby's residence was surrounded by armed CMPD and SWAT officers in minutes.

66. Upon information and belief, Officer Ellis saw Plaintiffs Felicia Morgan approaching the scene and assisted with restraining her and preventing her from entering the home despite her repeated efforts to explain that Bobby had mental health issues, he was not a danger to anyone and that she was his guardian.

67. Upon information and belief, it was Plaintiffs Felicia Morgan's intent to diffuse the situation.

8

68. Upon information and belief, Officer Ellis ordered Felicia Morgan to be tased multiple times as a form of restraint so she would not enter the residence.

69. Upon information and belief, Gonzalez arrived on the scene and retrieved his patrol rifle from his vehicle.

70. Upon information and belief, Gonzalez positioned himself across the street, in the front of 3944 Winfield Drive in Charlotte, near a tree when he saw Bobby in the window.

71. Upon information and belief, Gonzalez saw Bobby in the window of his home, and fired at least one shot from his rifle at Bobby, striking him and later left the scene.

72. Upon information and belief, Rud arrived at the scene at or around 9:15 a.m. and upon his arrival he self-deployed his patrol rifle after hearing shots. Rud used a scope to locate Bobby's position within the residence and fired one round into the home directly at Bobby. When he was unsure if Bobby was hit by the bullet, Rud fired a second bullet at Bobby which struck him.

73. Upon information and belief, Rud reportedly fired at Bobby after Officer Gonzalez fired his rifle at Bobby striking him.

74. Upon information and belief, Skipper arrived on the scene in response to an "Officer Involved Shooting" and positioned himself behind Bobby's residence. From that position, he saw Bobby through the kitchen window and fired multiple shots from his gun at Bobby, striking him.

75. Upon information and belief, Bobby was struck by at least three bullets from various firearms from Defendants Gonzalez, Rud, and Skipper to his facial area, neck, chest and arm.

76. Upon Bobby suffering excruciating pain from multiple gunshot wounds, he was able to exit the house with his hands in the air surrendering to the CMPD officers that were outside of his home.

77. No weapons were found on Bobby's person. The only items found on his person was a laptop bag with a Bible in it.

78. Upon information and belief immediately after the shooting, two CMPD officers entered Bobby's residence and did not find any gun or weapons in the kitchen or living room or in the area where Bobby appeared to have been shot. They only observed blood splatter.

79. Upon the execution of a search warrant for Bobby's home a weapon and blank ammunition was found locked in a safe in the left bedroom in the rear the residence.

80. Bobby did not brandish a weapon at any CMPD officers or in his home before he was shot several times by the Defendants Gonzalez, Rud, and Skipper.

9

81. Upon his surrender, officers drug Bobby through the front yard of his residence disregarding his life-threatening injuries inflicted by Officers Gonzalez, Rud, and Skipper, and further exacerbated the already life-threatening injuries Bobby was suffering from.

82. Bobby was charged with two counts of misdemeanor Communicating Threats on December 1, 2018, in file number 18 CR 242280 and 18CR 242281.

83. Bobby was charged with misdemeanor Assault on a Government Official in file number 242900 on December 6, 2018.

84. The criminal charges of Misdemeanor Assault on a Government Employee and Communicating Threats, filed under Mecklenburg County Criminal case numbers: 18 CR 242280, 81; 18 CR 242900,

85. Bobby was arrested, detained and held on a secured bond in the Mecklenburg County Jail on January 5, 2019.

86. All charges against Bobby were voluntarily dismissed without leave by the State of North Carolina on or about July 7, 2021.

87. As a direct and proximate cause of the acts and omissions of the Defendants, as alleged herein, Bobby suffered and sustained life threatening and ultimately life altering injuries that will affect and impair him for the remainder of his life.

88. Bobby's injuries were life-threatening and required multiple surgeries, procedures and hospitalizations from December 1, 2018, through January 2, 2019.

89. Bobby's jaw was wired shut as a result of his injuries, and he had to wear a wire on his jaw for over a year.

90. Bobby has had to undergo multiple follow up procedures and additional procedures to correct the injuries sustained to his head, neck and arm, including, but not limited to: reconstructive surgery of his throat and jaw, headaches, drooling, and neck and facial pain and impairment of his speech.

91. Presently due to his injuries, Bobby must battle constant physical pain, in addition to the mental and emotional distress of flashbacks and trauma from the incident.

## FIRST CAUSE OF ACTION:
### BATTERY
**(Defendants Gonzalez, Rud, and Skipper)**

92. Plaintiffs incorporated the allegations contained in the prior paragraphs of this Complaint by reference thereto, as if herein fully set forth.

10

93. Defendant Gonzales's action and conduct of discharging his weapon at Bobby and conduct described herein caused bodily contact to Bobby.

94. Defendant Rud's action and conduct of discharging his weapon at Bobby and conduct described herein caused bodily contact to Bobby.

95. Defendant Skipper's action and conduct of discharging his weapon at Bobby and conduct described herein caused bodily contact to Bobby.

96. As a result of the result of Defendant Gonzales, Rud, and Skipper and actions Bobby was struck by bullets multiple times on his body on his chest, arm, and face causing life threatening injuries.

97. Bobby did not consent, nor would he have been legally or intellectually capable of consenting, to the bodily contact described herein.

98. Defendants Gonzalez, Rud, and Skipper conduct described herein was intentional, in that the conduct was done with reason and purpose.

99. The intentional bodily conduct described herein actually offended Bobby' reasonable sense of personal dignity

100. The intentional bodily conduct described herein was harmful.

101. The intentional bodily conduct described herein caused Bobby physical pain.

102. The intentional bodily conduct described herein caused Bobby emotional pain.

103. As a direct and proximate result of Defendant Gonzalez, Rud, and Skipper's battery, Bobby has been damaged, *inter alia*, physical harm, mental distress, embarrassment, humiliation and pain and suffering in an amount in excess of twenty-five thousand dollars ($25,000.00).

104. Plaintiffs seeks to recover damages from the Defendants Gonzalez, Rud, and Skipper individually or as an agent of the Charlotte-Mecklenburg Police Department.

105. Defendants Gonzalez, Rud, and Skipper's actions were corrupt, malicious, and in part, outside of and beyond the scope of their duties.

<u>**SECOND CAUSE OF ACTION:**</u>
<u>**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**</u>
**(All Defendants)**

106. Plaintiffs incorporated the allegations contained in the prior paragraphs of this Complaint by reference thereto, as if herein fully set forth.

11

107. Defendants Gonzalez, Rud, and Skipper, assaulted and battered Bobby, as described in part in this Complaint by discharging their weapon and shooting Bobby multiple times.

108. Defendants Gonzalez, Rud, and Skipper, engaged in extreme and outrageous conduct that exceeds all bounds usually tolerated by decent society when they assaulted and battered Bobby, as described in part in this Complaint.

109. Defendants Gonzalez, Rud, and Skipper's conduct intended or was recklessly indifferent to the likelihood that it would cause severe emotional distress to Plaintiffs and Bobby.

110. It was reasonably foreseeable that Defendants Gonzalez, Rud and Skipper's behavior would cause severe emotional distress to Plaintiffs and Bobby.

111. Defendants Gonzalez, Rud and Skipper's conduct in fact caused Plaintiffs and Bobby severe emotional distress, evidenced by behavior afterwards.

112. Bobby's emotional distress is a mental condition that may be generally recognized and diagnosed by professionals trained to do so.

113. Defendant City is responsible for the intentional acts of Defendants Gonzalez, Rud, and Skipper because their actions (i) were expressly authorized by Defendant City and County; (ii) were committed within the scope of their employment and in furtherance of Defendant City's interest given that, among other things, they occurred during the course of official business; or (iii) were ratified by Defendant City and County to the extent, among other things, it failed to take appropriate and effective action against Defendants Gonzalez, Rud, and Skipper despite the conduct described herein.

114. Defendant City and County are vicariously liable for the intentional infliction of emotional distress that victimized Bobby.

115. As a direct and proximate result of Defendant's intentional infliction of emotional distress, Bobby has been damaged, *inter alia*, physical harm, mental distress, embarrassment, humiliation and pain and suffering in an amount twenty-five thousand dollars ($25,000.00)

116. Plaintiffs seeks to recover damages from the Defendants Gonzalez, Rud, and Skipper individually or as an agent of City via the Charlotte-Mecklenburg Police Department.

117. Defendant Gonzalez, Rud and Skipper's actions, and/or failure to act, were corrupt, malicious, and in part, outside of and beyond the scope of their duties

118. Defendant City's actions, and/or failure to act, were corrupt, malicious, and in part, outside of and beyond the scope of its duties.

**THIRD CAUSE OF ACTION:**

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

119. Plaintiffs re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

120. As law enforcement officers with the Charlotte-Mecklenburg Police Department Defendants Gonzalez, Rud, Skipper, Ellis, and Jensen owed a duty of reasonable care not to inflict emotional harm upon Bobby.

121. Defendants Gonzalez, Rud, Skipper, Ellis, and Jensen breached the duty of reasonable care that they owed to Bobby by failing to exercise the precaution a reasonably prudent person would have exercised to prevent emotional distress to a person with mental illness who was exhibiting clear signs of a mental health condition and posed no immediate harm to the Defendants.

122. It was reasonably foreseeable that Defendants Gonzalez, Rud, Skipper, Ellis, and Jensen's behavior would cause severe emotional distress to Bobby.

123. Defendants Gonzalez, Rud, Skipper, Ellis and Jensen's conduct in fact caused Bobby and Plaintiffs severe emotional distress, evidenced by their behavior afterwards.

124. Plaintiffs and Bobby's emotional distress is a mental condition that may be generally recognized and diagnosed by professionals trained to do so.

125. Defendant City is responsible for the negligent acts of their employees, Defendants Gonzalez, Rud, Skipper, Ellis, and Jensen because their actions (i) were expressly authorized by Defendant City; (ii) were committed within the scope of their employment and in furtherance of Defendant City's interest given that, among other things, they occurred during the course of official business; or (iii) were ratified by Defendant City to the extent, among other things, it failed to take appropriate and effective action against Defendants Gonzalez, Rud, Skipper, Ellis, and Jensen despite the conduct described herein.

126. Defendant City is vicariously liable for the negligent infliction of emotional distress that was inflicted upon Bobby.

127. As a direct and proximate result of Defendants' negligent infliction of emotional distress, Bobby has been damaged, *inter alia*, physical harm, mental distress, embarrassment, humiliation and pain and suffering in an amount twenty-five thousand dollars ($25,000.00).

128. Plaintiffs seeks to recover damages from Defendants Gonzalez, Rud, Skipper, Ellis, and Jensen individually or as an agent of City via the Charlotte-Mecklenburg Police Department.

129. Defendants Gonzalez, Rud, Skipper, Ellis, and Jensen's, actions, and/or failure to act, were corrupt, malicious, and in part, outside of and beyond the scope of their duties.

130. Defendant City's actions, and/or failure to act, were corrupt, malicious, and in part, outside of and beyond the scope of its duties.

### FOURTH CAUSE OF ACTION:
### GROSS NEGLIGENCE OF DEFENDANT CITY OF CHARLOTTE

131. Plaintiffs hereby incorporates the allegations contained in prior paragraphs of this Complaint, by reference thereto, as if herein fully set forth.

132. The City owed a duty to Bobby and the general public to ensure that the CMPD, its agents, and employees, would and could perform their duties in a manner as to avoid placing Bobby and other members of the public in unreasonable danger of serious injury or death.

133. The City breached these duties with regard to Bobby and Plaintiffs in several ways, including by not limited to, the following:

   a. It failed to ensure that the CMPD adequately trained, supervised, instructed and or/ monitored its employees and agents regarding the safety of evaluating and assessing civilians on distress calls;

   b. It failed to ensure that the CMPD established reasonable and appropriate policies and procedures governing the manner in which CMPD personnel would respond to calls involving potential suspects.

   c. It failed to ensure that the CMPD had established reasonable and appropriate policies regarding the hiring, promotion, and retention of law enforcement personnel;

   d. It failed to ensure that all Charlotte-Mecklenburg Department personnel complied with existing policies and procedures with regard to the arrest and detention of an arrestee which demonstrated signs of extreme duress, including but not limited to, mental disorders and suicidal tendencies; and

   e. It was careless and negligent in such other ways as may be identified during the course of discovery and/or trial.

134. The City's negligent acts and omissions are direct and proximate causes of the severe and permanent injuries for which Plaintiffs is entitled to recover damages under North Carolina law.

135. At all times relevant to the incident alleged herein, Defendants Gonzalez, Rud, Skipper, Ellis and/or Tilson committed the negligent acts and omissions alleged while acting within the course and scope of their employment and/or agency with the CMPD and

the City. As such, the City is liable for the negligent acts and omissions of Gonzalez, Rudd, Skipper, Ellis and/or Tilson and their negligence is imputed to the City through the doctrines of agency, vicarious liability, and *respondeat superior.*

## SIXTH CAUSE OF ACTION:
## NEGLIGENCE/GROSS NEGLIGENCE OF DEFENDANT EDWARD GONZALEZ
## in his individual and official capacities

136. Plaintiffs hereby incorporates the allegations contained in prior paragraphs of this Complaint, by reference thereto, as if herein fully set forth.

137. Gonzalez, individually and in his official capacity as a patrol officer for the CMPD, was negligent at the time and place alleged herein, and his negligent acts and omissions include, but are not limited to, the following:

   a. He failed to possess and/or demonstrate the necessary training and experience to serve as a patrol officer in the CMPD and respond to a call to service and failed to follow training and procedure before discharging his weapon and subsequently leaving the scene;

   b. He used lethal force as opposed to making in any attempt to discern the situation to determine whether discharging his weapon was required; and

   c. He was otherwise careless and negligent in such other ways as may be revealed by discovery or during the trial of this action.

138. At all times relevant to the incident alleged herein, Gonzalez's actions were malicious, intentional, unreasonable, willful and wanton, and grossly negligent. Gonzalez acted with conscious and reckless disregard for the safety of those whom he is charged to protect, including Bobby and Plaintiffs. Based upon the severity and deliberately indifferent nature of Gonzalez's conduct, he is not entitled to immunity from personal liability and may be sued in his individual capacity.

139. The negligent acts and omissions of Gonzalez, as described herein, were a proximate cause of the injuries and dan1ages sustained by Bobby and Plaintiffs.

140. The acts and omissions of Gonzalez, as described herein above, were willful, wanton, and/or reckless, and amount to gross negligence.

141. Gonzalez was aware of the probable consequences of his conduct, including severe personal injuries, in recklessly failing to intervene after Bobby's actions demonstrated severe emotional and mental distress. Notwithstanding these probable consequences, Gonzalez elected to fire his rifle at Bobby.

142. Gonzalez's negligent acts and omissions are imputed by law to the City by reason of Gonzalez's agency relationship with, and employment by, the City at all times relevant to the incident alleged herein, pursuant to the doctrine of *respondeat superior.*

15

143. Plaintiffs is entitled to recover from the Defendants, jointly and severally, an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) as a result of Gonzalez's negligence, gross negligence, and/or willful and wanton negligence.

## SEVENTH CAUSE OF ACTION:
## NEGLIGENCE/GROSS NEGLIGENCE OF DEFENDANT DERRICK RUD
## in his individual and official capacities

144. Plaintiffs hereby incorporates the allegations contained in prior paragraphs of this Complaint, by reference thereto, as if herein fully set forth.

145. Rud, individually and in his official capacity as an officer for the CMPD, was negligent at the time and place alleged herein, and his negligent acts and omissions include, but are not limited to, the following:

   a. He failed to possess and/or demonstrate the necessary training and experience to serve as an officer in the CMPD and respond to a person which exhibited signs of severe emotional distress and/or mental illness;

   b. He used aggressive methods in evaluating the scene and used excessive and lethal force in discharging his weapon multiple times, striking Boddy, self-destructive behavior; and,

   c. He was otherwise careless and negligent in such other ways as may be revealed by discovery or during the trial of this action.

146. At all times relevant to the incident alleged herein, Rud's actions were malicious, intentional, unreasonable, willful and wanton, and grossly negligent. Rud acted with conscious and reckless disregard for the safety of those whom he is charged with protecting, including Bobby and Plaintiffs. Based upon the severity and deliberately indifferent nature of Rud's conduct, he is not entitled to immunity from personal liability and may be sued in his individual capacity.

147. The negligent acts and omissions of Rud, as described herein, were a proximate cause of the injuries and damages sustained by the Plaintiffs Bobby Morgan.

148. The acts and omissions of Rud, as described herein above, were willful, wanton, and/or reckless, and amount to gross negligence.

149. Rud was aware of the probable consequences of his conduct, including severe personal injuries, in recklessly failing to properly assess Bobby's actions demonstrated severe emotional and mental distress. Notwithstanding these probable consequences, Rud elected to fire his weapon at Bobby at least 2 times, striking him when he was not in possession of a weapon.

150. Rud's negligent acts and omissions are imputed by law to the City by reason of Rud's agency relationship with, and employment by, the City at all times relevant to the incident alleged herein, pursuant to the doctrine of *respondeatsuperior*.

151. Plaintiffs is entitled to recover from the Defendants, jointly and severally, an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) as a result of Rud's negligence, gross negligence, and/or willful and wanton negligence.

## EIGHTH CAUSE OF ACTION:
## NEGLIGENCE/GROSS NEGLIGENCE OF DEFENDANT JOSEPH ELLIS
### in his individual and official capacities

152. Plaintiffs hereby incorporates the allegations contained in prior paragraphs of this Complaint, by reference thereto, as if herein fully set forth.

153. Joseph Ellis, individually and in his official capacity as an officer for the CMPD, was negligent at the time and place alleged herein, and his negligent acts and omissions include, but are not limited to, the following:

    a. He failed to possess and/or demonstrate the necessary training and experience to serve as an officer in the CMPD and respond to person which exhibited signs of severe emotional distress and/or mental illness;

    b. He failed to exercise reasonable care and to act reasonably to prevent the use of excessive and lethal force by other members of CMPD while responding to a person with known mental health impairments; and

    c. He was otherwise careless and negligent in such other ways as may be revealed by discovery or during the trial of this action.

154. At all times relevant to the incident alleged herein, Joseph Ellis' actions were malicious, intentional, unreasonable, willful and wanton, and grossly negligent. Joseph Ellis acted with conscious and reckless disregard for the safety of those whom he is charged with protecting, including Bobby and Plaintiffs. Based upon the severity and deliberately indifferent nature of Joseph Ellis' conduct, he is not entitled to immunity from personal liability and may be sued in his individual capacity.

155. The negligent acts and omissions of Joseph Ellis, as described herein, were a proximate cause of the injuries and damages sustained by the Plaintiffs Bobby Morgan.

156. The acts and omissions of Joseph Ellis, as described hereinabove, were willful, wanton, and/or reckless, and amount to gross negligence.

157. Joseph Ellis was aware of the probable consequences of his conduct, including severe personal injuries, in recklessly failing to properly assess Bobby's actions demonstrated severe emotional and mental distress.

158. Joseph Ellis' negligent acts and omissions are imputed by law to the City by reason of his agency relationship with, and employment by, the City at all times relevant to the incident alleged herein, pursuant to the doctrine of *respondeat superior*.

159. Plaintiffs is entitled to recover from the Defendants, jointly and severally, an amount

17

in excess of Twenty-Five Thousand Dollars ($25,000.00) as a result of Joseph Ellis' negligence, gross negligence, and/or willful and wanton negligence.

### NINTH CAUSE OF ACTION:
### NEGLIGENCE/GROSS NEGLIGENCE OF DEFENDANT JOSHUA SKIPPER
### in his individual and official capacities

160. Plaintiffs hereby incorporates the allegations contained in prior paragraphs of this Complaint, by reference thereto, as if herein fully set forth.

161. Skipper, individually and in his official capacity as a patrol officer for the CMPD, was negligent at the time and place alleged herein, and his negligent acts and omissions include, but are not limited to, the following:

    a. He failed to possess and/or demonstrate the necessary training and experience to serve as a patrol officer in the CMPD and respond to a person which exhibited signs of severe emotional distress and/or mental illness;

    b. He used combative, provocative, and aggressive methods of communication with as opposed to making in any attempt to discern the reason for behavior, or determining if Bobby had a weapon before discharging his gun multiple times at Bobby and striking him; and

    c. He was otherwise careless and negligent in such other ways as may be revealed by discovery or during the trial of this action.

162. At all times relevant to the incident alleged herein, Skipper's actions were malicious, intentional, unreasonable, willful and wanton, and grossly negligent. Skipper acted with conscious and reckless disregard for the safety of those whom he is charged to protect, including Bobby and Plaintiffs. Based upon the severity and deliberately indifferent nature of Skipper's conduct, he is not entitled to immunity from personal liability and may be sued in his individual capacity.

163. The negligent acts and omissions of Skipper, as described herein, were a proximate cause of the injuries and damages sustained by Bobby and Plaintiffs.

164. The acts and omissions of Skipper, as described hereinabove, were willful, wanton, and/or reckless, and amount to gross negligence.

165. Skipper was aware of the probable consequences of his conduct, including severe personal injuries, in recklessly failing to intervene after Bobby's actions demonstrated severe emotional and mental distress and failing to determine is Bobby had a weapon. Notwithstanding these probable consequences, Skipper elected to do nothing before discharging his weapon at Bobby multiple times and striking him.

166. Skipper's negligent acts and omissions are imputed by law to the City by reason of Skipper's agency relationship with, and employment by, the City at all times relevant to the incident alleged herein, pursuant to the doctrine of *respondeat superior*.

18

167. Plaintiffs is entitled to recover from the Defendants, jointly and severally, an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) as a result of Skipper's negligence, gross negligence, and/or willful and wanton negligence.

## TENTH CAUSE OF ACTION:
## NEGLIGENCE/GROSS NEGLIGENCE OF DEFENDANT JENSEN TILSON
## in his individual and official capacities

168. Plaintiffs hereby incorporates the allegations contained in prior paragraphs of this Complaint, by reference thereto, as if herein fully set forth.

169. Jenson Tilson, individually and in his official capacity as a patrol officer for the CMPD, was negligent at the time and place alleged herein, and his negligent acts and omissions include, but are not limited to, the following:

    a. He failed to possess and/or demonstrate the necessary training and experience to serve as a patrol officer in the CMPD and respond to a person which exhibited signs of severe emotional distress and/or mental illness;

    b. He failed to exercise reasonable care and to act reasonably to prevent the use of excessive and lethal force by other members of CMPD while responding to a person with known mental health impairments; and

    c. He was otherwise careless and negligent in such other ways as may be revealed by discovery or during the trial of this action.

170. At all times relevant to the incident alleged herein, Jensen Tilson's actions were malicious, intentional, unreasonable, willful and wanton, and grossly negligent. He acted with conscious and reckless disregard for the safety of those whom he is charged to protect, including the Plaintiffs Bobby Morgan. Based upon the severity and deliberately indifferent nature of Jensen Tilson's conduct, he is not entitled to immunity from personal liability and may be sued in his individual capacity.

171. The negligent acts and omissions of Jensen Tilson's, as described herein, were a proximate cause of the injuries and damages sustained by Plaintiffs Bobby Morgan.

172. The acts and omissions of Jenson Tilson, as described hereinabove, were willful, wanton, and/or reckless, and amount to gross negligence.

173. Jenson Tilson was aware of the probable consequences of his conduct, including severe personal injuries, in recklessly failing to intervene after Bobby's actions demonstrated severe emotional and mental distress. Notwithstanding these probable consequences, Jensen Tilson failed to act reasonably under the circumstances.

174. Jensen Tilson's negligent acts and omissions are imputed by law to the City by reason of his agency relationship with, and employment by, the City at all times relevant to the incident alleged herein, pursuant to the doctrine of *respondeat superior.*

19

175. Plaintiffs is entitled to recover from the Defendants, jointly and severally, an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) as a result of Jensen Tilson's negligence, gross negligence, and/or willful and wanton negligence.

### ELEVENTH CAUSE OF ACTION:
### 42 U.S.C. § 1983 LIABILITY OF DEFENDANT OFFICERS,
### in their individual and official capacities

176. Plaintiffs hereby incorporates the allegations contained in the prior paragraphs of this Complaint, by reference thereto, as if herein fully set forth.

177. The unconstitutional actions and/or omissions of Defendants complained of herein were performed under color of state law for purposes of a valid claim pursuant to 42 U.S.C. § 1983 for the violation of constitutional rights.

178. Defendants were required pursuant to the due process clause of the Fourteen Amendment and the Eight Amendment prohibition against cruel and unusual punishment clause to provide prompt medical care to Bobby in lieu of using lethal force against him.

179. There was observable behavior and objective evidence that Bobby was a subject with mental illness/extreme distress and requiring immediate proper care, and medical attention.

180. Defendant Gonzalez, Skipper, Rud, Ellis, and Tilson acts and omissions of recklessness and deliberate indifference, include but are not limited to, the following:

   a. Failing to adequately respond to Bobby as he exhibited emotional and mental distress;
   b. Failing to allow Bobby's mother and legal guardian to intervene and prevent severe injury from occurring;
   c. Failing talk the person down or verbally calm Bobby;
   d. Failing to immediately contact Crisis Intervention Team officers or a Mobile Crisis Team specifically trained to address the needs of the subjects who are mentally ill/under distress;
   e. Failure to use lesser levels of force or alternative methods;
   f. Use of deadly force; and
   g. In such other ways as may be learned during discovery or at the trial of this action.

181. The above-named Defendants' conduct deprived Bobby of his constitutional rights described herein and was engaged in with knowing, malicious, and conscious and reckless disregard for the rights and safety of Bobby.

182. The above-stated deliberately indifferent conduct of Defendants, as demonstrated towards Bobby, caused such severe injuries to Bobby that said indifference amounted to a "punishment" in violation of the Eighth Amendment of the United States Constitution and the due process clause of the Fourteenth Amendment of the United States

Constitution.

183. While the acts and omissions of Defendants Gonzalez, Skipper, Rud, Ellis and Tilson were carried out under color of state law, they had no justification or excuse in law, but instead were illegal, improper, and unrelated to any activity in which Charlotte-Mecklenburg Police officers may appropriately and legally engage in the course of protecting persons and property or insuring civil order.

184. Bobby suffered from a mental or psychological impairment qualifying as an immediate medical need to which Defendants were required to, under the due process clause, not be deliberately indifferent and to use lethal force against him.

185. Plaintiffs seeks and is entitled to compensatory damages for the physical and emotional distress, medical bills, permanent impairment, mental anguish, humiliation, and other compensable injuries suffered by Bobby as a result of the acts and omissions of the Defendants Gonzalez, Skipper, Rud, Ellis and Tilson who have been sued in their individual and official capacities.

186. Plaintiffs is entitled to compensatory damages against the named Defendant Officers in their individual capacities because they acted with deliberate, willful, and wanton disregard of his rights and privileges.

187. Plaintiffs also seeks and is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

## TWELFTH CAUSE OF ACTION:
## 42 U.S.C. § 1983, LIABILITY OF DEFENDANTS CITY OF CHARLOTTE

188. Plaintiffs hereby incorporates the allegations contained in prior paragraphs of this Complaint, by reference thereto, as if herein fully set fort

189. Based on information and belief, Municipal Defendants maintained customs that are the moving force behind the constitutional violation of Plaintiffs right, to wit: prompt, adequate and necessary medical care of individuals detained and in custody of law enforcement and the policies and procedures of the use of lethal and deadly force against a person.

190. Based on information and belief, Municipal Defendants failed to train its officers on crisis intervention and addressing the needs of mentally ill persons.

191. Municipal Defendants' failure to train amounted to deliberate indifference to the rights of persons with whom the police come in contact.

192. The aforementioned customs, policies, and procedures, including the failure to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification, and toleration, of wrongful conduct by the City were a moving force and/or a proximate

21

cause of the deprivations of Bobby' constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth herein.

193. Plaintiffs hereby incorporate the allegations contained in prior paragraphs of this Complaint, by reference thereto, as if herein fully set forth.

194. As a direct and proximate cause of the grossly negligent, reckless, intentional and willful conduct, of Gonzalez, Rud, Skipper, Ellis and Tilson, as well as the deliberately indifferentand conscious disregard for the health and safety of Bobby, Plaintiffs are entitled to recover punitive damages as set forth in N.C. Gen. Stat. § lD-25 to punish them for their illegal, egregiously wrongful, reckless, and willful misconduct and to deter such conduct by others.

195. Pursuant to Rule 9(k) of the North Carolina Rules of Civil Procedure, the aggravating factors warranting an award of punitive damages against Gonzalez, Rud, Skipper, Ellis, and Tilson are pled with specificity within the preceding paragraphs and are incorporated fully herein by reference.

196. Pursuant to Rule 9(k) of the North Carolina Rules of Civil Procedure, the aggravating factors warranting an award of punitive damages against the City of Charlotte are pled with specificity within the preceding paragraphs and are incorporated fully herein by reference.

197. Pursuant to N.C. Gen. Stat. § ID-25, Plaintiffs is entitled to a judgment in excess of Twenty-Five Thousand Dollars ($25,000.00) for punitive damages.

### THIRTEENTH CAUSE OF ACTION:
### AMERICANS WITH DISABILITES ACT
### Against Defendant City of Charlotte

198. Plaintiffs hereby incorporates the allegations contained in prior paragraphs of this Complaint, by reference thereto, as if herein fully set forth.

199. Congress enacted the Americans with Disabilities Act upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be "serious and pervasive social problem." 42 U.S.C.§12101(a)(2).

200. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

201. Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

202. The U.S. Department of Justice's regulations implementing Title II, particularly 28 C.F.R. § 35.160, require public entities to take appropriate steps to ensure that communications with members of the public with disabilities are as effective as communications with others. At all times relevant to this action, City of Charlotte is a public entity within the meaning of Title II of the ADA, and provided to the general public law enforcement programs, services, and/or activities for which effective communication was an integral part.

203. At all times relevant to this action, Bobby was a qualified individual with a disability within the meaning of Title II of the ADA and met the essential eligibility requirements for the receipt of due process and other law enforcement services, programs, and/or activities.

204. Through its acts and omissions described herein, Municipal Defendant has violated Title II of the ADA by excluding Bobby by reason of her disability from participation in and/or denying him the benefits of due process and other law enforcement services, programs, and/or activities provided to the general public.

205. Through the acts and omissions of its agents and employees Municipal Defendant subjected Bobby to discrimination on the basis of his disability in violations of Title II of the ADA by failing to provide her with communication that was as effective as communication provided to the general public detained and under the exclusive custody of law enforcement.

206. On information and belief agents and employees of Municipal Defendant committed the acts and omissions alleged herein intentionally and/or reckless disregard of Plaintiffs's rights.

207. As a direct and proximate result of these acts, Plaintiffs's sustained serious personal injuries and the Plaintiffs's suffered the damages outlined herein.

208. Upon information and belief, the agents and employees of Municipal Defendant have failed and continue to fail to:

    a.    Train and supervise agents and employees to recognize and identify mentally ill persons;

    b.    Train and supervise agents and employees to effectively communicate and interact with mentally ill persons; and

    c.    Adopt, implement, and enforce adequate policies and procedures to provide effective communication and interaction with mentally ill persons.

209. Because the discriminatory conduct of agents and employees is ongoing, declaratory and injunctive relief are appropriate remedies.

23

210. Pursuant to 42 U.S.C. § 12133, Plaintiffs are entitled to injunctive relief and torecover damages and reasonable attorneys' fees and costs incurred in bringing this action.

211. The above-named Defendants' conduct deprived Bobby of his constitutional rights described herein and was engaged in with knowing, malicious, and conscious and reckless disregard for the rights and safety of Plaintiffs Bobby Morgan.

212. Plaintiffs seeks and is entitled to compensatory damages for the physical and emotional distress, medical bills, permanent impairments, mental anguish, humiliation, and other compensable injuries suffered by Bobby as a result of the acts and omissions of the Municipal Defendant.

213. Plaintiffs also seeks and is entitled to attorney fees and costs pursuant to 42 U.S.C.§ 1988.

## FOURTEENTH CAUSE OF ACTION:
## MALICIOUS PROSECUTION
### (All Defendants)

214. Plaintiffs hereby incorporates the allegations contained in prior paragraphs of this Complaint, by reference thereto, as if herein fully set forth,

215. Defendants Gonzalez, Rud, Skipper, Ellis and Tilson had a duty use the care which a reasonably prudent person would exercise in the discharge of their duties of a like nature and under like circumstances.

216. Upon information and belief, Defendants Gonzalez, Rud, Skipper, Ellis and Tilson did not act reasonably and violated their duty when they purposely, maliciously and falsely accused Plaintiffs of committing felonies of assaulting officers with a deadly weapon and/or discharging a firearm at law enforcement officers.

217. Upon information and belief, Defendants Gonzalez, Rud, Skipper, Ellis and Tilson to be filed a false police report and falsely represented to Charlotte-Mecklenburg Police department and law enforcement that the Plaintiffs committed felonies of assaulting officers with a deadly weapon and/or discharging a firearm at law enforcement officers.

218. As a result of the Defendants Gonzalez, Rud, Skipper and Ellis and Tilson the Plaintiffs was arrested, detained and held on secured bonds in the Mecklenburg County Jail on January 5, 2019, for two counts of misdemeanor communicating threats and one count of misdemeanor assault on a government official.

219. Upon information and belief, the decision was made to charge Bobby with misdemeanor Assault on a Government Official after the lead CMPD Detective met with a Mecklenburg County Assistant District Attorney.

220. Upon information and belief, the information provided to 9-1-1 and to CMPD by

24

Defendants Gonzalez, Rud, Skipper, Ellis and Tilson were false, malicious and without any reasonable basis.

221. The actions of Defendants Gonzalez, Rud, Skipper, Ellis and Tilson were wrongful, malicious and designed to embarrass and damage Bobby. Plaintiffs suffered extreme emotional and mental anguish as a result of the Defendants' wrongful actions.

222. All charges against Bobby were voluntarily dismissed without leave by the State of North Carolina on or about July 7, 2021.

223. Bobby has suffered harm to his reputation, humiliation, embarrassment, mental anguish, and distress by being arrested and detained on the false allegations made by Defendants Gonzalez, Rud, Skipper, Ellis and Tilson.

224. As a direct and proximate result of the actions of the Defendants the Plaintiffs is entitled to recover damages in an amount in excess of $25,000.00. All acts and omissions committed by Defendants Gonzalez, Rud, Skipper, Ellis and Tilson are imputed to Defendant City pursuant to the doctrine of *Respondeat Superior*.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, by and through undersigned counsel of record, having set forth their claims against the Defendants, hereby pray of the Court that they have and recover of the Defendants, the following:

1. That Plaintiffs have and recover of the Defendants, jointly and severally, a judgment in excess of Twenty-Five Thousand dollars ($25,000.00) for compensatory damages, plus pre-judgment interest from the date of the filing of this action and post judgment interest until any verdict is paid pursuant to North Carolina General Statutes §§ 24-1 and 24-5;

2. That Plaintiffs have and recover of the Defendants, jointly and severally, a judgment in excess of Twenty-Five Thousand dollars ($25,000.00) for punitive damages, plus pre judgment interest from the date of filing this action and post interest until any verdict is paid pursuant to North Carolina General Statutes§§ 24-1, 24-5, and 1D- 25;

3. Injunctive relief compelling Defendants to provide adequate training on interactions with persons with mental health issues and to provide necessary and prompt medical intervention to subjects with mental illness in extreme distress while in the exclusive custody of law enforcement.

4. That Defendants be taxed with the costs of this action;

5. That Plaintiffs recover reasonable attorney's fees and costs as provided by North Carolina law and 42 § U.S.C. 1988;

6. That Plaintiffs receive a trial by jury on all issues triable by jury;

7.   For other such relief to which the Plaintiffs may be entitled given the allegations set forth herein; and,

8.   For any such other and further relief, in law or in equity, as the Court may deem just and proper.

This the 3rd day of January, 2023.

/s/Yolanda M. Trotman
N.C. Bar #28834
Law Office of Yolanda M. Trotman, PLLC
216 N. McDowell St. Suite 102
Charlotte NC 28204
Telephone: 980-785-1123
Fax: 980-785-1124
Email: yolanda@trotmanlawoffice.com
*Attorney for Plaintiffs*


/s/William H. Harding
NC Bar # 40623
Law Offices of William H. Harding
9115 Harris Corners Parkway Suite 220
Charlotte, NC 28269
Telephone: 704-509-3090
Fax: 704-919-5620
Email: bill@williamhharding.com
*Attorney for Plaintiffs*

26

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Amended Complaint* was electronically filed with the Clerk of Court using the CM/ECF filing system which will send electronic notification of the filing to the following:

Stephanie Webster
*Attorney for Defendant Derek Rud*

Roger A. McCalman
*Attorney for Defendant City of Charlotte*

Daniel Edward Peterson
*Attorney for Defendant Gonzalez*

Terry L. Wallace
*Attorney for Defendant Skipper*

This the 3rd day of January, 2023.

/s/William H. Harding_____
NC Bar # 40623
Law Offices of William H. Harding
9115 Harris Corners Parkway Suite 220
Charlotte, NC 28269
Telephone: 704-509-3090
Fax: 704-919-5620
Email: bill@williamhharding.com
*Attorney for Plaintiffs*